# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **TIMOTHY DAMON CARTER #160457,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **NO. 3:20-cv-00483** |
| **v.** ) | |
| ) | **JUDGE CAMPBELL** |
| **HERBERT H. SLATERY, III,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM

Petitioner Timothy Damon Carter filed this pro se habeas corpus case under 28 U.S.C. § 2254. The operative petition is an Amended Petition filed by Petitioner in August 2021. (Doc. Nos. 37 & 37-1 to 37-6). Respondent filed the state court record (Doc. Nos. 19–22)[1] and an Answer. (Doc. No. 38). Petitioner filed a Reply (Doc. No. 43) and a supplement. (Doc. No. 49).[2] Petitioner also requested transcripts for three state court hearings that, according to Respondent and as far as the Court can tell, have not been transcribed. (*See* Doc. No. 23 at 2–3). The Court denied this request but explained that it may revisit that ruling if it found the requested transcripts to be relevant to resolving Petitioner's claims. (Doc. No. 31 at 2).

The Court has now considered Petitioner's claims, and for the reasons explained below, the Court rules as follows: all but two of Petitioner's claims will be **DENIED**; two claims will be held in abeyance to give Petitioner an opportunity to address the Court's conclusion that they should be denied as procedurally defaulted; and the Court adheres to its prior ruling denying Petitioner's request for transcripts of the three un-transcribed state court hearings.

---

[1]    Petitioner filed additional documents (*see* Doc. Nos. 27, 29), and the Court opted to consider them as appropriate alongside the Amended Petition. (*See* Doc. No. 28 at 3; Doc. No. 31 at 3).

[2]    This supplement duplicates a prior filing (Doc. No. 47) that is, itself, substantively identical to another prior filing. (Doc. No. 46).

# I. BACKGROUND

This case has straightforward facts but a convoluted procedural history, owing to Petitioner's tendency to cycle through attorneys. It started with stolen comic books:

> This case arises from the theft of a comic book collection from a residence in La Vergne, Tennessee in April 2010. [Petitioner] was identified as a suspect in the theft when he sold or attempted to sell some of the comic books at area stores. During the investigation, law enforcement officers went to [Petitioner's] apartment and, upon seeing the stolen comic books in the backseat of a vehicle registered to [Petitioner], impounded his vehicle to the police department. After obtaining a search warrant, law enforcement officers searched [Petitioner's] vehicle and recovered a handgun.

*State v. Carter*, No. M2014-01532-CCA-R3-CD, 2016 WL 7799281, at *1 (Tenn. Crim. App. Mar. 8, 2016) (summary by Tennessee Court of Criminal Appeals (TCCA) on direct appeal).

Criminal proceedings commenced in Davidson County, with a grand jury indicting Petitioner on two counts: (1) theft of property valued at least $10,000 but less than $60,000; and (2) being a felon in possession of a handgun. (Doc. No. 19-1 at 4–6). The court appointed the first of four attorneys who would represent Petitioner in the trial court, Jessamine Grice. (*Id.* at 7). Attorney Grice represented Petitioner for a short time beginning on January 5, 2011, until she was relieved some time before March 25, 2011. The court appointed the second trial counsel, Graham Pritchard, who represented Petitioner until the court granted his oral motion to withdraw on March 25, 2011. (*Id.* at 8). "The record contains little documentation regarding the bases for the removal of Ms. Grice and Mr. Prichard." *Carter*, 2016 WL 7799281, at *1.

The court then appointed attorney number three, Paul Walwyn. Attorney Walwyn represented Petitioner from March 25, 2011, until the court ultimately granted his third motion to withdraw on May 16, 2012. *Id.* at *1–2. During this approximate fourteen-month span, Attorney Walwyn filed an unsuccessful motion to suppress (Doc. No. 19-1 at 44–54) and the State obtained

2

a superseding indictment. (*Id.* at 143–45). The only change from the original indictment was an increase in the value of the property for the theft charge to $60,000 or more. (*Id.* at 144).

Next came the fourth and final attorney, Jack Byrd. About two months after his appointment, Attorney Byrd made an oral motion to withdraw, and the court denied it. (Doc. No. 19-9). Attorney Byrd then filed a motion to rehear the suppression motion. (Doc. No. 19-2 at 4–8). While this motion was under consideration by the court, Attorney Byrd filed another unsuccessful motion to withdraw. (*Id.* at 11–12). The court then denied the motion to rehear the suppression motion. (*Id.* at 13–18). At that point, Attorney Byrd filed several motions on Petitioner's behalf in anticipation of a trial that was set to commence on November 5, 2012. (*Id.* at 18–30; Doc. No. 21-1 at 31–44). On October 16, 2012, however, Attorney Byrd filed a third motion to withdraw. (Doc. No. 19-2 at 35–36). And on October 26, 2012, the court held a hearing, granted the motion, and ruled that Petitioner would represent himself with Byrd as elbow counsel. (*Id.* at 37). Trial was re-set for January 28, 2013. (Doc. No. 20-3 at 114).

Meanwhile Petitioner, now pro se, filed several motions on October 30, 2022, including for a bill of particulars, to dismiss the indictment, to suppress evidence, and to disclose grand jury materials. (Doc. No. 19-2 at 38–89; Doc. No. 20-15 at 10–16). There is no record of the court ruling on these motions, but on January 25, 2013—three days before the scheduled trial— Petitioner filed a motion to reappoint Jack Byrd. (Doc. No. 19-2 at 109–10). Trial was re-set again, and Petitioner remained pro se until at least February 22, 2013, when he filed another motion referencing the right to counsel. (*Id.* at 112–16). The court held a "brief hearing" and granted Petitioner's request to reappoint Attorney Byrd.[3] (*Id.* at 121). At that point, trial was set for April 8, 2013. (Doc. No. 20-4 at 35).

---

[3]     The record does not contain a separate order memorializing this reappointment, but in open court on April 4, 2013, the court described the reappointment process as follows: "[Petitioner] was in court just

3

On April 2, 2013, Petitioner left threatening voicemails on Attorney Byrd's office phone and told Byrd to file a motion to withdraw. (Doc. No. 22, manual filing rec'd Apr. 26, 2021). Byrd complied. On April 4, 2013, the court held a hearing and ruled that Petitioner had forfeited his right to counsel. (Doc. No. 20-3 at 165–91). The next day, the court entered orders detailing its ruling (Doc. No. 19-2 at 117–22) and appointing Charles Walker standby counsel. (*Id.* at 123–24).

Trial commenced with Petitioner representing himself on April 8, 2013, and the jury found him guilty as charged. (*Id.* at 125–26). Petitioner represented himself at sentencing, and the court sentenced him as a career offender to an effective thirty-year sentence. (*Id.* at 198–99).

After sentencing, Petitioner agreed for counsel to represent him in the motion-for-new-trial and direct appeal phases. (Doc. No. 19-13 at 24). The court appointed Jay Martin. (*Id.*; Doc. No. 19-2 at 200). Attorney Martin filed a motion for judgment of acquittal and a motion for new trial, and the court denied them both. (Doc. No. 19-3 at 31–62).

At the outset of direct appeal, Attorney Martin withdrew due to a change in employment, and Manuel Russ ("appellate counsel") began representing Petitioner. (Doc. No. 20-15 at 63). Appellate counsel filed the appellant brief, and the TCCA affirmed Petitioner's judgments. *Carter*, 2016 WL 7799281. Appellate counsel also filed an application for permission to appeal in the Tennessee Supreme Court, and the Supreme Court denied it. (Doc. Nos. 20-9, 20-10).

Petitioner then filed the first of three pro se state habeas corpus petitions. (Doc. No. 20-11 at 3–13). The court summarily denied it. (*Id.* at 48–51). Petitioner appealed, and the TCCA dismissed the appeal for failure to prosecute. (Doc. No. 20-12). Petitioner's second pro se state habeas petition (Doc. No. 21-10 at 23–31) was summarily denied as well. (*Id.* at 33–35).

a couple of weeks ago where he said he didn't want -- he did not want to represent himself because he had represented himself and realized the difficulties with doing that. And I told him that Mr. Byrd then would be representing him and he left the courtroom." (Doc. No. 20-3 at 168). This reappointment is also reflected in a letter from Attorney Byrd to Petitioner dated April 1, 2013, stating that the court "appointed [Byrd] again to represent [Petitioner]." (Doc. No. 20-4 at 35).

4

Petitioner also filed a pro se petition for post-conviction relief. (Doc. No. 20-13 at 53–89). The court appointed Elaine Heard to represent him (Doc. No. 20-15 at 57), but Attorney Heard filed a motion to withdraw about three months later. (*Id.* at 89–90). The court granted the motion and appointed Kara Everett. (*Id.* at 92). Less than six weeks later, Attorney Everett filed a motion to withdraw as well. (*Id.* at 101–02). The court granted the motion and ruled that Petitioner had again forfeited his right to counsel. (*Id.* at 104–05). Petitioner, now pro se, requested permission to amend his post-conviction petition at a subsequent hearing (Doc. No. 20-20 at 7, 11), and the court gave him ten days to do so. (*Id.* at 18). Petitioner filed a "motion to amend additional issues for Petitioner's post-conviction." (Doc. No. 20-17 at 4–32). The court held an evidentiary hearing (Doc. Nos. 20-21, 20-22) and denied relief. (Doc. No. 20-16 at 26–72). Petitioner represented himself on post-conviction appeal, and the TCCA affirmed the denial of post-conviction relief. *Carter v. State*, No. M2018-00061-CCA-R3-PC, 2019 WL 1110308 (Tenn. Crim. App. Mar. 11, 2019). The Tennessee Supreme Court denied permission to appeal. (Doc. No. 21-9).

Then came Petitioner's third and final state habeas petition. The court summarily denied the petition (Doc. No. 20-10 at 126–28), the TCCA affirmed, *Carter v. State*, No. M2019-01014-CCA-R3-HC, 2020 WL 5558144 (Tenn. Crim. App. Sept. 17, 2020), and the Tennessee Supreme Court denied permission to appeal. (Doc. No. 21-19).

## II. CLAIMS

That brings the Court to the operative pleading in this case—Petitioner's Amended Petition for federal habeas corpus relief. Although Petitioner divides the Amended Petition into six distinct grounds for relief, his precise claims are not easy to pin down. That is because some of the headings for these grounds are not readily understandable, some headings do not readily match up with the supporting facts, and some supporting facts contain allegations that could be liberally construed as encompassing separate, additional grounds for relief.

5

Because Petitioner is representing himself, the Court must liberally construe the Amended Petition. And a liberal construction of a pro se habeas petition may require "active interpretation . . . to construe [the] petition to encompass any allegation stating federal relief." *See MacLloyd v. United States*, 684 F. App'x 555, 558 (6th Cir. 2017) (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)). So the Court will *both* take Petitioner at his word by considering the heading of each ground for relief as an independent claim, *and* give Petitioner the benefit of the doubt by actively interpreting each ground's supporting facts to assert whatever additional claims they may encompass.[4] As expressed in the following list of claims, the heading for each ground for relief becomes a numbered claim (Ground One becomes Claim 1, Ground Two/Claim 2, and so on), and any additional claim encompassed within a ground's supporting facts becomes a lettered subclaim (the first additional claim within Ground One's supporting facts becomes Claim 1.A, the second Claim 1.B, and so on). With this approach in mind, the Court understands Petitioner to assert the following claims:

1. The trial court lacked subject matter jurisdiction to preside over Petitioner's case. (Doc. No. 37 at 5; Doc. No. 37-1 at 2, 7–8, 10).

1.A. The seizure and search of Petitioner's vehicle was invalid. (Doc. No. 37 at 5;   Doc.   No. 37-1 at 3–8, 10).

1.B. There is insufficient evidence to support Petitioner's convictions. (Doc. No. 37-1 at 9).

2. The trial court erred by permitting Petitioner to represent himself on October 26, 2012, without ensuring that he knowingly and intelligently waived his right to counsel.   (Doc. No. 37 at 7; Doc. No. 37-2).

3. The trial court erred by failing to rule on the pro se pretrial motions Petitioner filed on October 30, 2012. (Doc. No. 37 at 8–9; Doc. No. 37-3 at 2–3, 7–8, 12).

3.A. The post-conviction court erred by deeming Claim 3 waived. (Doc. No. 37 at 8; Doc. No. 37-3 at 7–8).

---

[4]     This is a departure from the approach in Respondent's Answer, which frames the "Issues Presented" in a manner that does not acknowledge some of the claims asserted in the Amended Petition, construed either liberally or restrictively. (*See* Doc. No. 38 at 16).

3.B.    Appellate counsel was ineffective for failing to raise Claim 3 on direct appeal. (Doc. No. 37-3 at 3–7).

3.C.    The Tennessee Supreme Court erred on June 20, 2017, by denying Petitioner's pro se "motion to render decision," which sought an order compelling the trial court to rule on Petitioner's pro se motions. (Doc. No. 37-3 at 9–11).

4.    The trial court erred by denying the motions to suppress filed by Attorney Walwyn and Attorney Byrd. (Doc. No. 37 at 10; Doc. No. 37-4 at 8–13).

4.A.    The post-conviction court erred by not allowing Petitioner to amend his post-conviction petition to include claims that Attorneys Walwyn and Byrd ineffectively litigated the motions to suppress. (Doc. No. 37 at 10; Doc. No. 37-4 at 2–4, 6–7).

4.B.    Attorneys Walwyn and Byrd ineffectively litigated the motions to suppress. (Doc. No. 37-4 at 2–6).

5.    The trial court erred by declining to bifurcate his felon in possession of a weapon charge. (Doc. No. 37 at 12).[5]

5.A.    Appellate counsel was ineffective for failing to argue on direct appeal that the evidence was insufficient to support Petitioner's conviction for being a felon in possession of a handgun. (Doc. No. 37 at 12; Doc. No. 37-5 at 2–5).

6.    The trial court erred by ruling that Petitioner had forfeited his right to counsel on April 4, 2013, and forcing him to represent himself at trial four days later. (Doc. No. 37 at 13; Doc. No. 37-6).

### III. LEGAL STANDARD

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA sets a very high bar for granting federal relief on claims "adjudicated on the merits" in state court. *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Under AEDPA, such a claim cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law,

---

[5]    The Court interprets Claim 5 in this manner because Petitioner's wording for the heading of Ground Five is identical to the wording used by appellate counsel for the seventh issue presented for review in Petitioner's direct appeal brief. (*Compare* Doc. No. 37 at 12, *with* Doc. No. 20-5 at 10, 67). And this Court's phrasing of Claim 5 tracks the TCCA's phrasing for this issue. *See Carter*, 2016 WL 7799281, at *1, 27.

as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"; instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are unreasonable only "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was

8

'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

But review of claims rejected on the merits in state court is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner can exhaust all available state remedies for a claim by presenting it to the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (citing Tenn. Sup. Ct. R. 39). "To be properly exhausted, [a] claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is an "important corollary" to the exhaustion requirement. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). It prevents a federal habeas court from reviewing "federal claims that . . . the state court denied based on an adequate and independent state procedural rule." *Id.* A claim also may be "technically exhausted, yet procedurally defaulted" where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). "Cause" has been described as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). "Prejudice" means that the errors must have resulted in "actual and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (internal citations and quotation marks omitted). And

9

the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## IV. ANALYSIS

The Court will address Petitioner's claims in three groups: claims that are not viable grounds for relief in a federal habeas proceeding under Section 2254, claims that are without merit, and claims that the Court believes are not subject to a merits review based on the doctrine of procedural default. The first two groups of claims will be denied, and Petitioner will have an opportunity to respond to the Court's analysis with regard to the third group of claims.

## A. Non-Cognizable

A federal court can grant a state prisoner's request for habeas relief "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). A ground for habeas relief that does not assert a violation of federal law, therefore, is "outside the scope of federal habeas corpus review." *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citations omitted).

### 1. Claim 1—Trial Court's Subject Matter Jurisdiction

Petitioner asserts that the Davidson County Criminal Court lacked subject matter jurisdiction to preside over his criminal case. (Doc. No. 37 at 5; Doc. No. 37-1 at 2, 7–8, 10). But "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). So "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Jones v. Floyd*, No. 20-2080, 2021 WL 3411802, at *1 (6th Cir. May 27, 2021) (citing *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001); *Wills*, 532

F.2d at 1059 (6th Cir. 1976)); *see also Sturgis v. Horton*, No. 20-1947, 2021 WL 1327137, at *3 (6th Cir. Jan. 21, 2021).

Petitioner raised the argument underlying Claim 1, in some form, multiple times in state court before raising it in his federal habeas petition. (*See* Doc. No. 21-10 at 34 (denial of second state habeas petition)); *Carter*, 2019 WL 1110308, at *10 (affirming denial of post-conviction relief). In state post-conviction proceedings, for example, Petitioner argued that he received ineffective assistance regarding this issue from Attorney Martin because Martin "fail[ed] to file a motion for arrest of judgment based upon the lack of subject matter jurisdiction." *Carter*, 2019 WL 1110308, at *10. In rejecting that claim, the TCCA clearly explained why the Davidson County Criminal Court had jurisdiction over Petitioner's criminal case as a matter of state law:

> The petitioner's confusion arises from the fact that although he originally took the comic books from the victim's residence in Rutherford County, the stolen comic books were seized in Davidson County, and he was subsequently prosecuted in Davidson County. The jurisdictional question, as framed by the petitioner, is actually a claim of improper venue. Although our state constitution "provides that an accused must be tried in the county in which the crime was committed," the State need only establish venue, and thereby the jurisdiction of the trial court, by a preponderance of the evidence. *State v. Young*, 196 S.W.3d 85, 101-02 (Tenn. 2006) (citations omitted). Moreover, "[v]enue is a question for the jury," and "the jury is entitled to draw reasonable inferences from the evidence" when determining venue. *Id.* (citations omitted). "Importantly, where different elements of the same offense are committed in different counties, 'the offense may be prosecuted in either county.'" *Id.* (citing Tenn. R. Crim. P. 18(b)).
>
> Theft is committed by knowingly obtaining or exercising control over property without the owner's consent. *See* T.C.A. § 39-14-103(a). In this case, although the petitioner obtained the comic books from the victim's residence, he clearly exercised control over the comic books when they were inside his car in Davidson County. Because some elements of the theft offense were committed in Davidson County, the offense was properly prosecuted in Davidson County. Because the offense was properly prosecuted in Davidson County, counsel did not perform deficiently by failing to seek an arrest of judgment on the basis of a lack of jurisdiction.

*Carter*, 2019 WL 1110308, at *10.

This state-court ruling on a state jurisdictional matter is binding on this federal habeas court. *See Jones*, 2021 WL 3411802, at *1; *Sturgis*, 2021 WL 1327137, at *3. So Claim 1 is not a viable ground for relief in this case.

2. Claims 1.A and 4—Validity of the Search

Law enforcement obtained the physical evidence underlying this case (comic books and a handgun) from a search of Petitioner's car. In Claim 1.A, Petitioner asserts that the seizure and search of his car was invalid (Doc. No. 37 at 5; Doc. No. 37-1 at 3–8, 10), and in Claim 4, Petitioner asserts that the trial court erred by denying the motions to suppress the evidence obtained from this search filed by Attorneys Walwyn and Byrd. (Doc. No. 37 at 10; Doc. No. 37-4 at 2–4, 6–7). These claims arise under the Fourth Amendment, and a federal habeas court cannot grant "relief based on a state court's failure to apply the exclusionary rule of the Fourth Amendment, unless the claimant shows that the State did not provide him 'an opportunity for full and fair litigation of [his] Fourth Amendment claim.'" *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)). An "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.'" *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013) (quoting *Powell*, 528 U.S. at 949). This rule boils down to a basic question: "Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640.

For Claim 4, the answer to that question is clear—yes, the state courts permitted Petitioner to litigate the motions to suppress filed by Attorneys Walwyn and Byrd. For each of these motions, the trial court held hearings (Doc. Nos. 19-6, 19-10) and issued written orders denying the motions. (Doc. No. 19-1 at 44–54, Doc. No. 19-2 at 13–18). Petitioner raised the denial of these motions on direct appeal, and the TCCA affirmed the trial court's rulings. *See Carter*, 2016 WL 7799281, at *17–18. Regardless of Petitioner's disagreement with this outcome, it is clear that the state courts

12

provided an adequate avenue for litigation of the motions to suppress filed by Attorneys Walwyn and Byrd. That removes Claim 4 from the category of reviewable claims for a federal habeas court.

The same result ultimately applies to Claim 1.A, but reaching that conclusion requires a deeper dive into the record. Claim 1.A is Petitioner's attempt to present his own suppression arguments outside the context of the motions filed by Attorneys Walwyn and Byrd. And in his Reply, Petitioner essentially argues that he did not have an opportunity for full and fair litigation of his own suppression arguments because the trial court never ruled on the pro se motion to suppress Petitioner filed on October 30, 2012—during a period of time in which Petitioner was representing himself with Attorney Byrd as elbow counsel. (Doc. No. 43 at 3). But Petitioner *did* eventually have an opportunity to present the suppression arguments raised in this pro se motion, albeit in the context of a claim of ineffective assistance of appellate counsel. On post-conviction appeal, Petitioner asserted that appellate counsel "performed deficiently by failing to challenge on appeal the trial court's failure to issue a ruling on the petitioner's pro se pretrial motions." *Carter*, 2019 WL 1110308, at *11. In rejecting this claim, the TCCA noted appellate counsel's evidentiary hearing testimony that he omitted this claim because he believed that "the filings at issue were simply a rehashing of '[what the petitioner's previous counsel] had done regarding the suppression issues and had already had two hearings in front of the Court about it' and that he had adequately addressed those issues in his appellate brief." *Id.* The TCCA then "examine[d] the merit of the omitted issue" and determined that "petitioner presented no evidence to suggest" that "the court's failure to rule on any of the pro se motions presented a viable issue on appeal." *Id.*; *see also id.* at *8 ("[N]othing suggests that the validity of the search was anything other than fully and fairly litigated."). As with Claim 4, Petitioner may be dissatisfied with the outcome of this procedure, but the record nonetheless reflects that the State offered Petitioner an opportunity to raise the Fourth Amendment arguments underlying Claim 1.A. *See Brown v. Nagy*, No. 19-1847, 2019 WL

13

7761722, at *6 (6th Cir. Dec. 16, 2019) (denying certificate of appealability where district court ruled that habeas petitioner's Fourth Amendment claim was rendered non-cognizable by the petitioner raising the claim "in the context of an ineffective-assistance-of-[counsel] claim, which the state appellate court rejected on the grounds that the underlying Fourth Amendment claim was meritless"). Claim 1.A, therefore, is not subject to review through a federal habeas petition.

### 3. Claims 3.A and 4.A—Post-Conviction Court Errors

Petitioner asserts that the post-conviction court erred by deeming a claim waived (Claim 3.A) and denying his request to amend his post-conviction petition (Claim 4.A). (Doc. No. 37 at 8, 10; Doc. No. 37-3 at 7–8; Doc. No. 37-4 at 2–4, 6–7). But "[n]o federal constitutional provision compels states to provide access to post-conviction review after the conclusion of direct appeal, and therefore alleged infirmities in any such collateral review do not amount to a violation of any federal right." *Byars v. Gidley*, No. 16-2485, 2017 WL 4956919, at *2 (6th Cir. July 3, 2017) (citing *Kirby v. Dutton*, 794 F.2d 245, 247–48 (6th Cir. 1986); *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854–55 (6th Cir. 2017)). Accordingly, Claims 3.A and 4.A are not cognizable grounds for federal habeas relief.

### 4. Claim 3.C—Tennessee Supreme Court Error

On June 20, 2017, the Tennessee Supreme Court denied Petitioner's pro se "motion to render decision" seeking to compel a ruling on Petitioner's pro se motions. The Supreme Court explained that "the case in which [Petitioner] ha[d] filed his pro se motions is concluded in the trial court and on appeal." (Doc. No. 20-15 at 132). Petitioner challenges that ruling in Claim 3.C. (Doc. No. 37-3 at 9–11). But that ruling is not reviewable in a federal habeas case because there is no federal right to the type of extraordinary relief Petitioner sought in the state supreme court through his "motion to render decision." *See Frazier v. Slatery*, No. 19-6483, 2020 WL 9423916, at *2 (6th Cir. May 22, 2020) (quoting *Cress*, 484 F.3d at 853 (denying certificate of appealability

14

on habeas petitioner's "claims relating to the adjudication of his motion to correct an illegal sentence" as "'outside the scope of federal habeas corpus review'")). So Claim 3.C will be denied.

     5. Claim 5—Trial Court's Failure to Bifurcate

The court bifurcated Petitioner's trial, such that the jury decided Petitioner's theft charge before considering his gun charge. In Claim 5, Petitioner asserts that the court erred by failing to bifurcate further when it did not require the jury to determine whether he was in possession of a weapon before learning he was a convicted felon. (Doc. No. 37 at 12). In other words, Petitioner argues the court improperly joined trial on the elements of his gun charge. But the United States Supreme Court "has not held improper joinder to be unconstitutional." *Wheeldon v. Campbell*, No. 16-2054, 2017 WL 3165083, at *3 (6th Cir. Mar. 6, 2017) (citing *United States v. Lane*, 474 U.S. 438, 448 & n.8 (1986)). "Although the Supreme Court has suggested in a footnote that inappropriate joinder could be so prejudicial as to violate a defendant's Fifth Amendment right to a fair trial," *id.*, the Sixth Circuit has called this suggestion "dicta" that "does not constitute clearly established federal law" for purposes of ruling on a federal habeas petition. *Tighe v. Berghuis*, No. 16-2435, 2017 WL 4899833, at *2 (6th Cir. Apr. 21, 2017) (citing *Mayfield v. Morrow*, 528 F. App'x 538, 541–42 (6th Cir. 2013)). So federal habeas relief is not available for Claim 5.[6]

**B. Without Merit**

As explained above, a federal habeas court usually only considers the merits of claims that were exhausted in state court. *See* 28 U.S.C. § 2254(b)(1)(A). Before raising a claim in a federal habeas petition, therefore, a petitioner typically must present "the same claim" to the state courts. *See Wagner*, 581 F.3d at 414. If a petitioner properly exhausts a cognizable claim in this way, then

---

[6]    Even if the Court could consider Claim 5, relief would be "available only to a defendant who can demonstrate actual rather than potential prejudice." *Tighe*, 2017 WL 4899833, at *2 (citing *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007)). And Petitioner has not attempted to show that he experienced actual prejudice from the court failing to hold an element-by-element trial on his gun charge.

the federal habeas court reviews the merits through the lens of "AEDPA deference"—a standard of review that considers whether the "state court [] applied clearly established federal law to reasonably determined facts," and if so, prevents a federal habeas court from "disturb[ing] the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 520 (2020) (quoting *Harrington*, 562 U.S. at 103).

But even for claims that were not properly exhausted in state court, a federal habeas court may address the merits if that is a "straightforward ground for decision." *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) (citation omitted); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). So the Court will also conduct a de novo merits review of any remaining claims that Petitioner did *not* properly exhaust, provided those claims are "easily resolvable against" Petitioner. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving [a constitutional] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")

### 1. Claim 1.B—Insufficient Evidence

A jury convicted Petitioner of two offenses: (1) theft of property valued at least $60,000 and (2) being a felon in possession of a handgun. The Court construes Claim 1.B to assert that there was insufficient evidence to support both convictions. (Doc. No. 37-1 at 9). On direct appeal, Petitioner exhausted a claim of insufficient evidence regarding the theft conviction, so that ruling will be reviewed with AEDPA deference. Petitioner did not, however, exhaust such a claim with respect to the gun conviction, so that aspect of Claim 1.B will be reviewed de novo.[7]

---

[7] Petitioner exhausted a related claim of appellate ineffectiveness (*see* Claim 5.A, discussed below), but that is not an insufficient-evidence claim, so Petitioner did not properly exhaust this part of Claim 1.B.

16

The federal law governing a claim of insufficient evidence comes from *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson*, 443 U.S. at 319). The court, in doing so, does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)).

A. <u>Theft Conviction</u>

For the theft conviction, the TCCA applied this clearly established federal law to reject Petitioner's sufficiency challenge on the merits. *See Carter*, 2016 WL 7799281, at *21–22. Two levels of deference thus apply to this ruling: "First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007)).

The TCCA ruled as follows:

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a) (2014). Theft of property valued over $60,000 but less than $250,000 is a Class B felony. T.C.A. § 39-14-105(5) (2014). The value of the property taken is an element of the offense of theft. *Id.*; *see also State v. Mike Wayne Tate*, No. 03C01-9204-CR-127, 1993 WL 55631, at *2 (Tenn. Crim. App., at Knoxville, March 4, 1993), perm. app. denied (Tenn. June 1, 1993). Tennessee Code Annotated section 39-11-106(a)(36)(A) defines "value" as "(i) The fair market value of the property or service at the time and place of the offense; or (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." The fair market value of property is a question of fact for the jury. *See State v. Hamm*, 611 S.W.2d 826, 828–29 (Tenn. 1981).

The record shows that the jury was properly instructed on how to assess the value of the stolen property—that the value of the stolen comic books was the fair market value at the time of the offense. Dr. Clark testified that he determined the fair

17

market value of the comic books by using his experience and knowledge as a comic book collector, based particularly on his monthly involvement in the online comic book market. He also utilized online pricing guides and research. Additionally, Dr. Clark repurchased the stolen comic books from some of the dealers and collectors, and he used the purchase price in those transactions to help determine their value. The Great Escape also provided him a valuation for the comic books that were in its possession. Using these tools and his knowledge, Dr. Clark determined that the value of the stolen comic books was $83,130. There was an opportunity for cross-examination of Dr. Clark regarding his determination of the value. The jury heard Dr. Clark's testimony concerning his methodology for ascertaining value and determined that the fair market value was more than $60,000. We conclude that the evidence presented to the jury was sufficient to support determination, beyond a reasonable doubt, that the value of the property exceeded $60,000. The Defendant is not entitled to relief on this issue.

*Carter*, 2016 WL 7799281, at *22.

This ruling was reasonable. The TCCA noted the essential elements of the theft offense and summarized the supporting evidence presented at trial. It was the job of the jury, not a subsequent reviewing court, to weigh the evidence. "The jury in this case was convinced, and the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). The TCCA reasonably answered that question no, so this aspect of Claim 1.B will be denied.

### B. Gun Conviction

For the gun conviction, the State had to present evidence from which a rational trier of fact could find that Petitioner (1) possessed a handgun (2) as a convicted felon. *See* Tenn. Code Ann. § 39-17-1307(c)(1). The "felon" element was easily satisfied by evidence of Petitioner's prior felony conviction. *See Carter*, 2016 WL 7799281, at *13.

The "possession" element was also satisfied, based on a theory of constructive possession. "In criminal cases, a possession element may generally be established by showing actual or constructive possession." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014) (citing *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013)). "While actual possession refers to physical control

18

over an item, constructive possession requires only that a defendant have the power and intention . . . to exercise dominion and control over the item allegedly possessed." *Id.* (internal citations and quotation marks omitted). "In essence, constructive possession is the ability to reduce an object to actual possession." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) (citation omitted).

Here, Detective Eubank testified that he found a gun in a black bag under the front hood of a car belonging to Petitioner. (Doc. No. 19-12 at 8–10 (testimony); Doc. No. 19-15 at 76 (picture)). To establish Petitioner's control over the car, Eubank testified that he found documents in the car with Petitioner's name on them, including a Tennessee Department of Revenue registration form, a cell phone bill, and some paperwork from a towing company. (Doc. No. 19-12 at 8–11). The jury found that evidence sufficient to establish Petitioner's constructive possession of the gun, and viewing the evidence in a light most favorable to the State, that finding was not "so insupportable as to fall below the threshold of bare rationality." *See Coleman*, 566 U.S. at 656; *State v. Bernard*, No. E2005-00852-CCA-R3CD, 2006 WL 1063687, at *4, 6 (Tenn. Crim. App. Apr. 21, 2006) (finding sufficient evidence to support constructive possession of a gun found in the trunk of a defendant's vehicle). So even applying a de novo review, Petitioner's challenge to the sufficiency of the evidence supporting his gun conviction is without merit.

To sum up, the TCCA reasonably rejected Petitioner's sufficiently challenge to his theft conviction, and the jury rationally found sufficient evidence for Petitioner's gun conviction. Claim 1.B, accordingly, will be denied.

### 2. Claims 3.B and 5.A—Ineffective Assistance of Appellate Counsel

Petitioner asserts that appellate counsel was ineffective for failing to raise two claims on direct appeal, namely: the trial court's failure to issue a ruling on Petitioner's pro se pretrial motions (Claim 3.B), and the sufficiency of the evidence supporting Petitioner's conviction for being a felon in possession of a firearm (Claim 5.A). (Doc. No. 37 at 12; Doc. No. 37-3 at 3–7;

Doc. No. 37-5 at 2–5). Petitioner raised both of these claims on post-conviction appeal, and the TCCA applied the governing federal law of *Strickland v. Washington* to reject them on the merits. *Carter*, 2019 WL 1110308, at *11–12 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Strickland v. Washington*, 466 U.S. 668, 689 (1984)); *Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("Ineffective assistance of appellate counsel claims are governed by the same *Strickland* standard as ineffective assistance of trial counsel.")). So AEDPA deference applies to those rulings.

"Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness under prevailing professional norms." *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (quoting *Rompilla v. Beard*, 545 U.S. 374, 380 (2005)). Importantly, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288 (citing *Barnes*, 463 U.S. 745). To establish deficiency for appellate counsel's failure to raise a claim, a petitioner "must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Robbins*, 528 U.S. 22 at 289). And to establish prejudice, a petitioner "must demonstrate 'a reasonable probability that, but for his counsel's unreasonable failure to' raise this issue on appeal, 'he would have prevailed.'" *Webb*, 586 F.3d at 399 (quoting *Robbins*, 528 U.S. at 285).

## A. Pro Se Pretrial Motions

The TCCA resolved Claim 3.B on deficiency grounds. It gave two reasons why appellate counsel was not deficient for failing to argue that the trial court erred by not ruling on Petitioner's pro se pretrial motions: first, because Petitioner did not clarify the pro se pretrial motions to which he was referring; and second, because Petitioner's presented no evidence to counter appellate

20

counsel's evidentiary hearing testimony that he "did not believe that the court's failure to rule on any of the pro se motions presented a viable issue on appeal." *Carter*, 2019 WL 1110308, at *12.

Although the first part of this ruling lacks support in this record, the second part is reasonable. That is, in Petitioner's post-conviction appeal brief, he *did* name certain pro se pretrial motions to which he was referring—his motion to dismiss the indictment and motion for a bill of particulars. (*See* Doc. No. 21-2 at 25–26). But his post-conviction appeal brief *did not* establish that the trial court's failure to rule on these motions presented meritorious issues on appeal, and he certainly did not establish that the failure to rule on these motions presented issues that were "clearly stronger than issues that counsel did present." *Caver*, 349 F.3d at 348. Appellate counsel raised eight distinct issues on direct appeal (*see* Doc. No. 20-5), including much more developed issues like the trial court's forfeiture-of-counsel and suppression rulings. *See Carter*, 2016 WL 7799281. Appellate counsel, therefore, "did all that [is] required in framing the appeal: he sifted through the universe of potential claims and winnowed the list to those he deemed most likely to succeed." *Powell v. Berghuis*, 560 F. App'x 442, 452 (6th Cir. 2013) (citing *Robbins*, 528 U.S. at 288). The TCCA's deference to appellate counsel's judgment on this matter was reasonable.

## B. Sufficiency of the Evidence Supporting the Gun Conviction

The TCCA resolved Claim 5.A on deficiency grounds as well, reasoning that "the evidence was more than sufficient to support" Petitioner's gun conviction:

> During the search of the vehicle registered in the petitioner's name, authorities discovered the victim's stolen comic books, "a vehicle registration and cell phone bill, both listing the [petitioner's] name," and "a gun in the engine compartment of the vehicle," which "gun was shown to the jury and entered into the record as evidence." Elaine Ragan, an employee of the criminal court clerk's office "identified a certified copy of the [petitioner's] prior conviction for a felony in case number 2004-B-1762, Theft of Property, a Class C Felony." Under these circumstances, Mr. Russ did not perform deficiently.

*Carter*, 2019 WL 1110308, at *11 (internal citations omitted).

This ruling was reasonable. As discussed above, this Court concluded that Petitioner's sufficiency challenge to his gun conviction was without merit under a de novo application of the standard set out in *Jackson v. Virginia*. Appellate counsel cannot be deficient for failing to raise a claim that lacks merit. *See Webb*, 586 F.3d at 399 ("An obviously meritless claim is never 'clearly stronger' than the claims raised on direct appeal."). So the Court agrees with the TCCA that appellate counsel was not deficient for failing to raise this claim.

3. Claim 4.B—Ineffective Litigation of the Motions to Suppress

Attorney Walwyn and Attorney Byrd each filed a motion to suppress. In Claim 4.B, Petitioner asserts that they ineffectively litigated their respective motion. (Doc. No. 37-4 at 2–6). Petitioner raised this claim on post-conviction appeal, and the TCCA applied the applicable *Strickland* standard to reject it on the merits. *See Carter*, 2019 WL 1110308, at *9 (considering claim that Petitioner received ineffective assistance prior to trial based on counsel's handling of the motion to suppress). So AEDPA deference applies.

A claim of ineffective assistance of counsel, to restate, requires a petitioner to make a showing of deficient performance resulting in prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). Performance is deficient where it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. And where a federal habeas court is reviewing a claim of ineffective assistance with AEDPA deference, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at

22

101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

According to the TCCA, Petitioner failed to show ineffective assistance by Attorney Walwyn and Attorney Byrd because the "underlying claims" related to the motions to suppress were "fully and fairly litigated," and "[n]o evidence suggests that counsel could have done anything more." *Carter*, 2019 WL 1110308, at *9. Petitioner, on the other hand, argues that both attorneys *could* have done more. Petitioner says that Attorney Walwyn could have contested probable cause, rather than waive it. (Doc. No. 37-4 at 2–5). And he says that Attorney Byrd could have argued for suppression based on the fact that Rutherford County law enforcement seized his vehicle in Davidson County without a warrant. (*Id.* at 5–6).

As to Attorney Walwyn's handling of the probable cause issue, Detective Eubank testified at an evidentiary hearing that he went to Petitioner's residence—part of a complex with gates at the vehicle entrances—and saw Petitioner's car parked "in a group of parking spots next to the dumpster that served the condominium building." *Carter*, 2016 WL 7799281, at *5. Eubank testified that he decided to obtain a search warrant after looking "through the back window" of Petitioner's car and seeing "'in plain view' on the backseat . . . comic books matching the victim's description of the stolen comic books, in that they had a black 'S' written in sharpie pen on the comic books." *Id.* at *6. In his motion to suppress, Attorney Walwyn argued for suppression because Eubank's "presence on [Petitioner's] property where the vehicle was parked was unlawful." *Id.* at *5. But Attorney Walwyn did not argue that Eubank's observation of the items in Petitioner's backseat did not amount to probable cause. (*See* Doc. No. 19-6 at 39 (Walwyn's evidentiary hearing argument that "I'm not arguing what [Eubank] saw or what he didn't see"); *see also* Doc. No. 19-10 at 7–8 (Byrd's hearing argument that "Walwyn did not argue the probable

23

cause status of this case. I don't believe that should have been waived, but I am -- by the Court's order I'm restricted from arguing things that were previously heard.")).

Despite arguing that Attorney Walwyn should not have waived the probable cause issue, Petitioner offers no reason to think that there was some untapped strategy for prevailing on it. And regardless of any waiver, the TCCA considered the probable cause issue when it made an affirmative finding on direct appeal that "Detective Eubank's observation of the comic books in plain view gave him probable cause to believe that [Petitioner's] vehicle contained stolen property." *Carter*, 2016 WL 7799281, at *19. So the TCCA reasonably rejected Petitioner's claim that Attorney Walwyn mishandled his motion to suppress.

As for Attorney Byrd, the record reflects that he *did* make the very argument that Petitioner claims he should have made. (*See* Doc. No. 19-2 at 5–8 (Byrd's motion arguing that suppression was required because Rutherford County law enforcement seized Petitioner's vehicle in Davidson County without a warrant)). Petitioner does not explain what else Attorney Byrd could have done to convince the trial court to accept it. And the TCCA affirmed the trial court's rejection of this argument on direct appeal. *See Carter*, 2016 WL 7799281, at *19 (citing *State v. Carter*, 160 S.W.3d 526, 532 (Tenn. 2005) ("As to the Defendant's argument that, pursuant to Tennessee Code Annotated section 6-54-301, Detective Eubank was operating outside the parameters of his jurisdiction and his authority as a police officer, we agree with the trial court's conclusion that this statutory violation is not a violation of the Defendant's constitutional rights, rendering the exclusionary rule inapplicable.")). So the TCCA also reasonably rejected Petitioner's claim that Attorney Byrd mishandled his motion to suppress. Claim 4.B, accordingly, will be denied.

4. Claim 6—Forfeiture Ruling

On April 4, 2013, the trial court ruled that Petitioner had forfeited his right to counsel. Four days later, trial commenced with Petitioner representing himself. In Claim 6, Petitioner asserts that

24

the trial court's forfeiture ruling was in error. (Doc. No. 37 at 13; Doc. No. 37-6). Petitioner raised this argument on direct appeal, and the TCCA rejected it on the merits. *Carter*, 2016 WL 7799281, at *14–17. AEDPA deference therefore applies.

The Court would ordinarily begin its review of a claim subject to AEDPA deference by identifying "the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs" the state court's ruling. *See Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Mirzayance*, 556 U.S. at 122). But as Respondent rightly notes (*see* Doc. No. 38 at 25–26), the Supreme Court has not considered the underlying question of when, if at all, a recalcitrant criminal defendant can forfeit his right to counsel. *See Carruthers v. Mays*, 889 F.3d 273, 289–90 (6th Cir. 2018). So the TCCA had "broad discretion" to adjudicate Petitioner's forfeiture claim. *See McKinney v. Hoffner*, 830 F.3d 363, 371 (6th Cir. 2016) (quoting *Woods v. Donald*, 575 U.S. 312, 318 (2015) ("The Supreme Court has repeatedly reminded us that 'where the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims.'")).

Indeed, the lack of clearly established federal law on this subject essentially prevents Petitioner from prevailing on this claim under 28 U.S.C. § 2254(d)(1). Section 2254(d)(1), to restate, provides that a habeas claim cannot succeed unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." And *without* a Supreme Court case addressing this subject, Petitioner cannot establish that the state court's ruling contradicted or unreasonably applied clearly established federal law. *See Carruthers*, 889 F.3d at 290 (denying relief under Section 2254(d)(1) on a habeas claim challenging a state court ruling that defendant "forfeited his right to counsel through his pre-trial 'misbehavior'"); *see also id.* at 291 (citing *Swiger v. Brown*, 86 F. App'x 877, 882 (6th Cir. 2004) ("[N]o clearly established Supreme Court precedent dictates

25

that formal warnings [about the dangers and disadvantages of self-representation] are required, even in the context of a defendant's waiving his right to counsel.")).

Petitioner also cannot prevail under Section 2254(d)(2). This section bars habeas relief unless the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The TCCA's forfeiture ruling included a few statements that, according to Petitioner, are unsupported by the record. (*See* Doc. No. 37-6 at 2–3). But these alleged misstatements of fact do not entitle Petitioner to relief.

Petitioner had four appointed attorneys before trial. The TCCA, in affirming the trial court's forfeiture ruling, made some broad statements about Petitioner's treatment of all four attorneys, including that Petitioner "refused to cooperate with any of them" and "was difficult or hostile towards each of [them]." *Carter*, 2016 WL 7799281, at *16. Petitioner says this statement is unsupported as it pertains to his first two attorneys, Attorney Grice and Attorney Pritchard. (Doc. No. 37-6 at 2–3). But the TCCA recognized that the "record contains little documentation regarding the bases for the removal of Ms. Grice and Mr. Prichard." *Carter*, 2016 WL 7799281, at *1. So the TCCA relied on the explanation given by the trial court for these removals in the trial court's "subsequent orders," which was that Petitioner "had 'difficulties' with both of these attorneys." *See id.* With no other evidence on this subject in the record, it was not unreasonable for the TCCA to rely on the trial court's description of prior proceedings over which it presided.

Even assuming, without deciding, that the TCCA "unreasonably interpreted the record before it" when broadly describing Petitioner's treatment of all four attorneys, it is also clear that "any erroneous statement of the facts surrounding" Petitioner's treatment of Attorney Grice and Attorney Pritchard "did not affect its ultimate decision." *See Carruthers*, 889 F.3d at 291–92 (finding that "misstatement" by the state court did not provide a ground for relief under Section 2254(d)(2) on claim challenging a forfeiture ruling). Attorney Grice and Attorney Pritchard

26

represented Petitioner for less than three months at the very beginning of his state criminal case. And just as they played a small role in Petitioner's case, they were not an essential feature of the TCCA's forfeiture analysis. The full context of this analysis reflects that it was Petitioner's mistreatment of Attorney Walwyn and Attorney Byrd—the attorneys who represented Petitioner for the bulk of his case[8]—that animated the TCCA's ruling:

> The Defendant was represented by four different attorneys and refused to cooperate with any of them. He repeatedly asked the trial court to allow him to proceed pro se and filed motions without the aid of counsel. The Defendant was belligerent and verbally abusive to Mr. Walwyn's and to Mr. Byrd's staffs. He left messages on Mr. Byrd's voicemail, which were played for the trial court, threatening to assault Mr. Byrd in court. As indicated by the trial court, the Defendant was difficult or hostile towards each of his four appointed counsel, and the Defendant even spit on Mr. Byrd in court. Mr. Walwyn and Mr. Byrd both advised the trial court that the Defendant was making it difficult, if not impossible, for them to represent him. On several occasions, the Defendant refused to come into the courtroom and refused to participate in the proceedings that he attended, turning his back to the trial judge during one proceeding. This evidence supports the trial court's finding that the Defendant was engaging in delay tactics to prevent the case from going to trial.

> Even though the forfeiture of counsel occurred prior to trial, based on these facts, we conclude that the Defendant's behavior was "sufficiently egregious to support a finding that he forfeited his right to counsel" and in such a situation, the trial court had no other choice than to conclude that the Defendant had forfeited his right to counsel. *Carruthers* [*v. Mays*], 35 S.W.3d [516,] 550 [Tenn. 2000]. Due to numerous delays caused by the Defendant, this case was not tried until three years after the crime was committed. The Defendant was uncooperative or refused to participate in multiple proceedings, and he repeatedly demanded that he be appointed a new attorney or be allowed to represent himself. The Defendant's threatening and abusive behavior towards his attorneys and their staff seemed to escalate with each new appointment of counsel. Indeed, the Defendant spit on his fourth attorney and threatened to physically assault him on multiple occasions. In such a situation, the trial court would be hard-pressed to appoint a fifth attorney without serious concern for his or her safety.

> Accordingly, we conclude that the Defendant's behavior warranted a forfeiture of the right to counsel. We pay close heed to the admonishment in *Carruthers* that "a finding of forfeiture is appropriate only where a defendant egregiously manipulates

---

[8] Attorney Walwyn represented Petitioner for about fourteen months, and Attorney Byrd represented him for the next five months before the trial court ruled that Petitioner would represent himself with Byrd as elbow counsel on October 26, 2012. Attorney Byrd was then briefly reappointed to represent Petitioner, at Petitioner's request, in advance of trial set for April 8, 2013.

the constitutional right to counsel so as to delay, disrupt, or prevent the orderly administration of justice." 35 S.W.3d at 550. We conclude that, in this case, "the record demonstrates such egregious manipulation" and, thus, a finding of forfeiture was proper. *Id.* The Defendant is not entitled to relief as to this issue.

*Carter*, 2016 WL 7799281, at *16–17.

As this ruling shows, the TCCA reasonably considered Petitioner's treatment of Attorney Walwyn and Attorney Byrd to reflect escalating hostility toward court-appointed attorneys that reached an unacceptable crescendo when Petitioner left threatening voicemails on Attorney Byrd's office phone six days before trial was set to begin. This Court's review of the voicemails leads it to agree with the TCCA's conclusion that the trial court would have been "hard-pressed to appoint a fifth attorney without serious concern for his or her safety."[9] *See id.* at *16.

As a final note, Petitioner contends that the TCCA's reference to him spitting on Attorney Byrd is unsupported by the record because Byrd did not testify about this incident at the April 4, 2013, hearing where the trial court made its forfeiture ruling. (Doc. No. 37-6 at 3). That may be so, but the trial court made a note of the spitting incident shortly after it occurred in its written order denying one of Attorney Byrd's motions to withdraw on September 25, 2012. (Doc. No. 19-2 at 11). Given this contemporaneous record of the spitting incident occurring, it was reasonable for the TCCA to include the incident as part of its rationale for affirming the forfeiture ruling.

For all of these reasons, reviewing the TCCA's forfeiture ruling with AEDPA deference, Petitioner is not entitled to habeas relief for his claim that the court violated his right to counsel by requiring him to represent himself at trial.

---

[9]    Petitioner's threatening language toward Attorney Byrd included the following: "I don't want you to represent me at trial, you need to file a motion to withdraw because if I sit next to you I will stab you in your [expletive removed] face and keep on stabbing you in your face because you is not my counsel, you is not my attorney, you can take this message how you want to take it. . . . Withdraw off my [expletive removed] case or I will catch assault charge on you . . . . I'm asking you to get off my case before I catch an assault charge on you in open court. You can take this message to the judge, whoever you want to take it to." (Doc. No. 22, manual filing rec'd Apr. 26, 2021).

28

## C. Procedurally Defaulted

There are two claims remaining, both asserting that the trial court erred. In Claim 2, Petitioner asserts that the trial court improperly allowed Petitioner to begin representing himself on October 26, 2012. (Doc. No. 37 at 7; Doc. No. 37-2). And in Claim 3, Petitioner asserts that the trial court failed to rule on several pro se pretrial motions he filed while representing himself on October 30, 2012. (Doc. No. 37 at 8–9; Doc. No. 37-3 at 2–3, 7–8, 12).

Respondent failed to address both of these claims in its Answer. As Petitioner rightly notes (*see* Doc. No. 49), Respondent did not recognize Claim 2 as an independent ground for relief, and instead seemingly assumed that Claim 2 is entirely duplicative of Claim 6 (Petitioner's separate challenge to the trial court's forfeiture ruling). (*See* Doc. No. 38 at 24 (addressing "Grounds two and six" together)). Respondent also did not recognize Claim 3 as an independent ground for relief. (*See id.*). One option to remedy Respondent's oversight would be for the Court to direct Respondent to file a new Answer. (*See* Doc. No. 16 at 3 (warning Respondent that failure to file an adequate Answer "may result in Respondent being directed to file a new Answer")). But Respondent has already filed the available state court record, and the Court has already expended considerable resources sifting through the record to address all of Petitioner's other claims to this point. This effort has led the Court to conclude, as explained below, that Claims 2 and 3 are procedurally defaulted.

"Procedural default is generally an affirmative defense." *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (collecting cases). So Respondent, as the party defending this case, would ordinarily be "'obligated to raise' and 'preserv[e]'" procedural default "if it is not to 'lose the right to assert the defense thereafter.'" *Trest v. Cain*, 522 U.S. 87, 89 (1997) (quoting *Gray v. Netherland*, 518 U.S. 152, 166 (1996)). But "in appropriate circumstances," a federal court may

take the initiative on its own to "raise a petitioner's procedural default." *Day v. McDonough*, 547 U.S. 198, 206 (2006) (collecting circuit court cases).

The Court exercises its discretion to take that approach for two main reasons. First, it is in the interest of judicial economy—and the interest of the parties—for the Court to avoid prolonging these proceedings by ordering a new Answer if the Court believes, as it does here, that raising procedural default on its own provides a straightforward path to resolving Claims 2 and 3. *See Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018) (citations omitted) ("[W]here a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue."). Second, Respondent, to reiterate, did not recognize Claims 2 and 3 as independent grounds for relief, so there was no "explicit and deliberate waiver of its procedural-default defense." *See Maslonka v. Hoffner*, 900 F.3d 269, 277 & n.1 (6th Cir. 2018) (citing *Wood v. Milyard*, 566 U.S. 463, 472–73 (2012) (noting that overriding a deliberate waiver of procedural default would be an abuse of discretion)). The Court will therefore proceed with a procedural default analysis of Claims 2 and 3, to which Petitioner will have an opportunity to respond. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002) ("The main concern with raising procedural default sua sponte is that a petitioner not be disadvantaged without having had an opportunity to respond.")).

### 1. Claim 2—Allowing Petitioner to Represent Himself on October 26, 2012

On October 26, 2012, the trial court held a hearing on Attorney Byrd's third motion to withdraw, granted the motion, and ruled that Petitioner would represent himself with Byrd as elbow counsel. Petitioner alleges that he told the court at that hearing that he wanted to represent himself, but he asserts in Claim 2 that the court failed to ensure that his waiver of counsel was knowing and intelligent. (*See* Doc. No. 37-2 at 2–3).

Petitioner did not make this argument to the TCCA at any point. *See Carter*, 2016 WL 7799281 (direct appeal); *Carter*, 2019 WL 1110308 (post-conviction appeal); *Carter*, 2020 WL 5558144 (appeal from denial of third state habeas corpus petition). And no state court remedies remain for doing so. *See* Tenn. Code Ann. § 40-30-102(c) (establishing Tennessee's "one-petition" limitation on post-conviction relief); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (explaining the three narrow circumstances in which a state prisoner may file a motion to reopen post-conviction proceedings, none of which applies to these claims). So Claim 2 is procedurally defaulted. *See Bagley*, 696 F.3d at 483 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999)) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.").

The Sixth Circuit has confirmed that the type of claim presented in Claim 2—a claim that a trial court did not exercise appropriate care when allowing a defendant to represent himself—is subject to the doctrine of procedural default, just as any other claim. *See Carruthers*, 889 F.3d at 289 (explicitly rejecting the argument that "a claim of total deprivation of counsel at a critical stage in the criminal proceedings cannot be defaulted because it alleges structural constitutional error"); *Stanfill v. Adams*, No. 19-5925, 2020 WL 13563356, at *2 (6th Cir. Mar. 2, 2020) (denying certificate of appealability for a claim like Claim 2 because it was procedurally defaulted and the petitioner "failed to argue that the procedural default should be set aside due to cause and prejudice or actual innocence"). Claim 2, therefore, is not subject to review in this federal habeas proceeding unless Petitioner can "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks*, 843 F.3d at 1134 (citing *Sutton*, 745 F.3d at 790–91).

As cause to overcome the default of Claim 2, Petitioner argues that appellate counsel was ineffective for failing to raise this issue on direct appeal. (Doc. No. 37 at 7). This type of argument can, in theory, provide a pathway to demonstrating cause for a default. *See Hodges*, 727 F.3d at

31

530 (citing , 477 U.S. at 492). But "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Id.* (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). And Petitioner did not present the TCCA with a claim of appellate counsel ineffectiveness that relates to Claim 2. *See Carter*, 2019 WL 1110308 (post-conviction appeal). So Petitioner has not demonstrated the cause necessary to obtain review of Claim 2.

Petitioner also fails to show a manifest miscarriage of justice. "This exception has been applied only when a habeas petitioner has demonstrated that he is actually innocent." *Hodges*, 727 F.3d at 532 (citing *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006)). A credible claim of actual innocence must begin with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Petitioner has not presented any new evidence of innocence, so he cannot rely on this potential pathway to obtaining review of Claim 2.

For all of these reasons, it appears that Claim 2 is clearly barred from review in this case based on the doctrine of procedural default. Before making a final ruling on this claim, however, Petitioner will have an opportunity to respond to the Court's analysis on this issue.

2. Claim 3—Failure to Rule on Pro Se Pretrial Motions

Four days after the trial court ruled that Petitioner would represent himself, on October 30, 2012, Petitioner filed several pro se motions. In Claim 3, Petitioner asserts that the trial court erred by failing to rule on these motions. (Doc. No. 37 at 8–9; Doc. No. 37-3 at 2–3, 7–8, 12).

Petitioner raised this claim on post-conviction appeal, and the TCCA ruled that Petitioner had waived it by not raising it on direct appeal. *See Carter*, 2019 WL 1110308, at *8 (citing Tenn. Code Ann. § 40-30-106(g) ("To the extent that the petitioner is referring to the trial court's failure

32

to rule on pro se pleadings filed prior to trial, any claim of error in this regard that occurred prior to trial has been waived by the petitioner's failure to present it as a ground for relief on direct appeal.")). Tennessee's waiver rule is "an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *See McNeill*, 10 F.4th at 595 (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir. 2002) (citations omitted). And the TCCA "actually enforced [this] state procedural sanction" by not reviewing Claim 3 further. *See McNeill*, 10 F.4th at 595 (quoting *Maupin*, 785 F.2d at 138). So Claim 3 is procedurally defaulted. *See Davila*, 582 U.S. at 527 (citing *Beard v. Kindler*, 558 U.S. 53, 55 (2009) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.")).

As noted above, Petitioner properly exhausted a claim that appellate counsel was ineffective for failing to raise Claim 3 on direct appeal. As an independent ground for federal habeas relief, the Court reviewed that claim of appellate ineffectiveness with AEDPA deference in its analysis of Claim 3.B. *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019) (citing *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006)). But as an assertion of cause to excuse a procedural default, this claim of appellate ineffectiveness is subject to de novo review. *Id.* (citing *Joseph*, 469 F.3d at 459). So the Court will revisit appellate counsel's treatment of Claim 3 on direct appeal in this context.

Even on de novo review, it is difficult for a petitioner to establish that counsel was ineffective for failing to raise one claim over another on direct appeal. *See Robbins*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("[I]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.")). That is because the hallmark of effective

appellate advocacy is raising "only those arguments most likely to succeed," and not "every nonfrivolous argument." *Davila*, 582 U.S. at 533 (citations omitted). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Robbins*, 528 U.S. at 288). And a showing of deficiency must be accompanied by a showing of prejudice, which is "'a reasonable probability that . . . [the petitioner] would have prevailed on his appeal' had counsel raised the unreasonably omitted issues." *Smith*, 780 F. App'x at 230 (quoting *Robbins*, 528 U.S. at 288).

Petitioner has not shown deficiency or prejudice. As for deficiency, appellate counsel testified at the evidentiary hearing that he recalled Petitioner asking him to raise Claim 3 on direct appeal, but he chose not to because he did not think that "[t]he pro se motions . . . added anything to the argument [they] were making at the Court of Appeals." (Doc. No. 20-21 at 12). Appellate counsel also testified that, based on his recollection at the time—about two-and-a-half years after filing the appellate brief—Petitioner's pro se pretrial motions "really rehash[ed]" the issues raised in the motions to suppress filed by Attorney Walwyn and Attorney Byrd, and those suppression issues were already being raised. (*Id.*). Petitioner attempts to undermine this testimony by arguing that his pro se pretrial motions addressed more than just suppression issues. (*See* Doc. No. 37-3 at 3–7). But Petitioner fails to recognize that appellate counsel's testimony about rehashing suppression issues was equivocal. (*See* Doc. No. 20-21 at 12 ("[A]gain, this has been at least a couple of years.")). And the important takeaway from appellate counsel's testimony is that he was aware of Petitioner's desire to raise Claim 3 on direct appeal but made a strategic decision not to include it. That decision was not deficient unless Claim 3 was clearly stronger than the eight issues appellate counsel *did* raise. Petitioner simply fails to make this required showing of comparative strength, particularly with respect to the forfeiture-of-counsel and suppression rulings that appellate counsel zealously (though unsuccessfully) challenged. (*See* Doc. No. 20-5 at 24–47

34

(arguing the forfeiture and suppression issues)); *Carter*, 2016 WL 7799281, at *14–19 (TCCA's analysis of the forfeiture and suppression issues). Petitioner, accordingly, has not shown that appellate counsel was deficient for failing to raise Claim 3 on direct appeal. *See Halvorsen v. White*, 746 F. App'x 489, 501 (6th Cir. 2018) (citing *Barnes*, 463 U.S. at 752) ("Appellate advocacy is not a 'kitchen-sink' activity; it demands selectivity of argument.").

As for prejudice, the record reflects that Petitioner filed four pro se pretrial motions on October 30, 2012, including motions for a bill of particulars, to dismiss the indictment, to suppress evidence, and to disclose grand jury materials. For starters, Petitioner does not attempt to explain how the pro se motion for grand jury materials presented a meritorious appeal issue. And the pro se suppression motion *did* essentially rehash the suppression issues that were actually raised and rejected on direct appeal. (*See* Doc. No. 19-2 at 62–88 (pro se motion challenging the warrantless seizure of Petitioner's vehicle by a law enforcement officer operating outside the parameters of his jurisdiction)); *Carter*, 2016 WL 7799281, at *17–19. So no prejudice there.

Petitioner argues that the trial court's failure to rule on the pro se motion for a bill of particulars prevented him from learning how the State arrived at the $60,000+ valuation of the stolen comic books in the superseding indictment. (Doc. No. 37-3 at 6). But the record reflects that Petitioner was provided that information anyway. At the hearing on Petitioner's motion for new trial, Attorney Byrd testified that he specifically discussed this issue with Petitioner and explained his strategy for attacking the $60,000+ valuation at trial, which included cross-examining Dr. Clark's expected testimony on the subject. (*Id.* at 50–51 ("Q. And you're aware that [Dr. Clark is] able to testify to the value of his own property? A. And I explained that to Mr. Carter.")). And Bret Gunn, an attorney representing the State, testified that he interacted with Petitioner personally while Petitioner was representing himself before trial. (*Id.* at 57). Gunn testified that he specifically recalled giving Petitioner a copy of "the spreadsheet that [Dr. Clark] had done that detailed the

35

comic books that were taken and his estimation of the value." (*Id.* at 58). Petitioner, accordingly, has not shown that a bill of particulars would have contributed to his defense.

Finally, Petitioner states that the pro se motion to dismiss the indictment raised three arguments, but none have merit. First, Petitioner argued that the indictment "fail[ed] to state the facts constituting the offense with a degree of certainty." (Doc. No. 37-3 at 5). This is an apparent reference to a Tennessee statute requiring an indictment to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Tenn. Code Ann. § 40-13-202. But Tennessee courts "eschew strict pleading requirements for indictments," *State v. Duncan*, 505 S.W.3d 480, 485 (Tenn. 2016), and "'indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements.'" *Id.* at 491 (quoting *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000)). The Tennessee Supreme Court has "held that a specific reference within the indictment to the relevant statute may provide the accused sufficient notice of the charged offense." *State v. Smith*, 492 S.W.3d 224, 241 (Tenn. 2016) (citing *State v. Sledge*, 15 S.W.3d 93, 95 (Tenn. 2000); *State v. Carter*, 121 S.W.3d 579, 587 (Tenn. 2003)). Here, both counts of the superseding indictment cite the relevant statute, and the Court concludes that it easily passes muster under Tennessee's standard for sufficient indictments. (*See* Doc. No. 19-1 at 144–45).

Second, Petitioner argued that the indictment should have been dismissed because it "fail[ed] to show a state of facts bringing the offense within the jurisdiction of the county in which the indictment was preferred." (Doc. No. 37-3 at 6). This is an apparent reference to another state statutory requirement. *See* Tenn. Code Ann. § 40-13-208 ("It is not necessary for the indictment to allege where the offense was committed, but the proof shall show a state of facts bringing the

36

offense within the jurisdiction of the county in which the indictment was preferred."). But as discussed above with regard to Claim 1—Petitioner's challenge to the Davidson County Criminal Court's subject matter jurisdiction—the state courts have explained to Petitioner why Davidson County had jurisdiction over Petitioner's criminal case under state law. *See Carter*, 2019 WL 1110308, at *10 (explaining that a defendant may be prosecuted in any county where he committed an element of the offense). So this challenge to the indictment was futile, and Petitioner did not suffer prejudice from the trial court failing to rule on it.

The third and final argument in the pro se motion to dismiss the indictment was that the indictment resulted from "an invalid process." (Doc. No. 37-3 at 6). Petitioner does not flesh out this argument with any detail, but to the extent that he is implying that the indictment should have been dismissed because the seizure and search of his car were invalid, the trial court had already denied the motions to suppress filed by Attorney Walwyn and Attorney Byrd by the time Petitioner filed this pro se motion. Petitioner would not have obtained relief by relitigating suppression issues through the framework of a motion to dismiss the indictment. So Petitioner did not suffer prejudice from the trial court's failure to address this argument.

For all of these reasons, Petitioner's claim of appellate ineffectiveness with regard to Claim 3 is without merit under a de novo review, so it cannot excuse Claim 3's procedural default. And because Petitioner has not presented new evidence of innocence, he cannot rely on the actual innocence gateway to obtaining review either. *See House*, 547 U.S. at 537. Accordingly, Claim 3 appears to be procedurally defaulted without cause. As with Claim 2, however, Petitioner will have a chance to respond to this analysis before the Court makes a final ruling.

## V. REQUEST FOR TRANSCRIPTS

As the Court noted at the outset of this Memorandum, Petitioner asked for transcripts of three state court hearings that have not been transcribed. The requested transcripts pertain to: (1)

37

an alleged preliminary hearing that occurred on August 11, 2010; (2) an arraignment on the superseding indictment that occurred on May 17, 2012; and (3) the hearing at which the trial court granted Attorney Byrd's third motion to withdraw and ruled that Petitioner would represent himself with Byrd as elbow counsel on October 26, 2012. (*See* Doc. No. 23 at 2–3 (Petitioner's request); Doc. No. 19-1 at 148 (minute entry for May 17, 2012 hearing); Doc. No. 19-2 at 37 (minute entry for October 26, 2012 hearing)). Based on the analysis above, the Court finds these requested transcripts unnecessary to resolve Petitioner's claims.

In particular, Petitioner requested the alleged August 2010 preliminary hearing transcript to support Claim 1, his challenge to the trial court's subject matter jurisdiction. (Doc. No. 23 at 2–3). But this transcript would not impact the Court's conclusion that Claim 1 is not a cognizable ground for relief in a federal habeas proceeding. *See Jones*, 2021 WL 3411802, at *1 (quoting *Strunk*, 27 F. App'x at 475 ("[A petitioner] cannot obtain habeas relief based on the state court's lack of subject-matter jurisdiction because 'a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review.'")). Petitioner did not attempt to explain the relevance of the May 2012 transcript, and now having analyzed Petitioner's claims, the Court sees none. And Petitioner requested the October 2012 transcript to support Claim 2, his challenge to the procedure by which the trial court allowed him to waive his right to counsel on October 26, 2012. (Doc. No. 23 at 3). Regardless of what was said at this hearing, however, this transcript would not change the Court's conclusion that Claim 2 appears to be procedurally defaulted without cause. So the Court has no basis to order Respondent to either transcribe and furnish or provide a narrative summary of this hearing. *See* Habeas Rule 5(c); *Vizcaino-Ramos v. Lindamood*, No. 1:14-cv-01230, 2017 WL 5163588, at *4 (W.D. Tenn. Nov. 7, 2017) ("[I]f the claim is procedurally defaulted and the default is unexcused, discovery on the claim would be futile[.]").

38

## VI. CONCLUSION

For these reasons, all but two of Petitioner's claims will be **DENIED**.

The remaining claims are: **Claim 2**, asserting that the trial court erred by permitting Petitioner to represent himself on October 26, 2012; and **Claim 3**, asserting that the trial court erred by failing to rule on pro se pretrial motions Petitioner filed on October 30, 2012. These two claims appear to be subject to dismissal as well, based on the doctrine of procedural default. But because the Court is raising procedural default on its own initiative, Claim 2 and Claim 3 will be held in abeyance to give Petitioner an opportunity to respond to the Court's procedural default analysis. Any response Petitioner files **MUST** follow the instructions in the Order accompanying this Memorandum.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

39