IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **TIMOTHY DAMON CARTER** <br> **#0160457,** | ) <br> ) <br> ) | |
| Petitioner, | ) <br> ) | NO. 3:20-CV-00483 <br> JUDGE CAMPBELL |
| v. | ) <br> ) | MAGISTRATE JUDGE HOLMES |
| **HERBERT H. SLATERY, III,** | ) <br> ) <br> ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This is a pro se habeas corpus case filed under 28 U.S.C. § 2254 filed by Petitioner Timothy Damon Carter, an inmate of the Hardeman County Correctional Facility in Whiteville, Tennessee. Pending before the Court are the following motions by Petitioner: Motion for Reconsideration (Doc. No. 69), to which Respondent has replied in opposition (Doc. No. 72); "Motion for 30 Day Extension of Time to File re Notice of Appeal/Certificate of Appealability" (Doc. No. 76); Motion to Ascertain Status of Case (Doc. No. 78); Motion to Supplement Petitioner's Reply in Opposition of Respondent's Response to Petitioner's Motion to Reconsider (Doc. No. 82); Motion to Supplement Petitioner's Reply in Opposition of Respondent's Response to Petitioner's Motion to Reconsider (Doc. No. 84); Motion to Ascertain Status (Doc. No. 85); and Motion for a Status Update (Doc. No. 92). All motions are ripe for review.

### I. BACKGROUND

On August 29, 2023, the Court denied all but two of Petitioner's claims, found that the two remaining claims (Claim 2 and Claim 3)[1] appeared to be subject to dismissal based on the doctrine

---

[1] Claim 2 is Petitioner's assertion that the trial court erred by permitting Petitioner to represent himself on October 26, 2012, without ensuring that he knowingly and intelligently waived his right to counsel. (Doc. No. 37 at PageID# 4145; Doc. No. 37-2). Claim 3 is Petitioner's assertion that the trial court erred by failing to rule on the pro se pretrial motions

1

of procedural default, and gave Petitioner 30 days to respond to this procedural default analysis. (Doc. Nos. 60, 61).

Petitioner subsequently requested two extensions of time to comply with the Court's Order. (Doc. Nos. 62, 64). The Court granted both motions, giving Petitioner a total extension of 90 days to file a response to the Court's procedural default analysis. (Doc. Nos. 63, 65). In the Court's Order of November 2, 2023, the Court extended Petitioner's deadline to November 30, 2023, and advised Petitioner that "the Court does not anticipate granting him any further extensions of time, absent extraordinary circumstances." (Doc. No. 65 at 1). The Court warned: "If Petitioner does not file a response by the deadline, the Court will enter a final Order dismissing this case for the reasons stated in the Memorandum entered on August 29, 2023." (*Id*. at 2).

On December 11, 2023, Petitioner filed a Motion to Ascertain Status of Case. (Doc. No. 66). In that Motion, he did not address the Court's procedural default analysis. Instead, he asked for a "status update" for this case. (*Id*. at 1). Having received no response to the Court's prior Order, the Court dismissed this case with prejudice on December 20, 2023. (Doc. No. 67). The Court also denied a Certificate of Appealability. (*Id*.)

After the entry of judgment in this case, Petitioner filed a Motion for Reconsideration (Doc. No. 69), followed by a "Motion for 30 Day Extension of Time to File re Notice of Appeal/Certificate of Appealability" (Doc. No. 76), Motions to Supplement Petitioner's Reply in Opposition of Respondent's Response to Petitioner's Motion to Reconsider (Doc. Nos. 82, 84), and three motions seeking the status of his other motions. (Doc. Nos. 78, 85, 92). Petitioner also

---

Petitioner filed while representing himself on October 30, 2012. (Doc. No. 37 at PageID# 4156-47; Doc. No. 37-3 at PageID# 4185-86, 4190-91, 4195).

2

filed a supplement to his amended supplemental brief (Doc. No. 77) and various notices indicating his intent to "add issues into the appellant's Notice of Appeal." (Doc. Nos. 88, 89, 90, 91).

Petitioner additionally filed a Notice of Appeal of the Court's Order dismissing his case.[2] (Doc. No. 80).

## II. MOTIONS TO ASCERTAIN STATUS

Plaintiff's motions seeking the status of his other pending motions (Doc. Nos. 78, 85, 92) will be granted insofar as the Court will address all pending motions herein.

## III. MOTION TO RECONSIDER AND MOTIONS TO SUPPLEMENT PETITIONER'S REPLY IN OPPOSITION TO RESPONDENT'S RESPONSE TO PETITIONER'S MOTION TO RECONSIDER

On January 17 and 18, 2024, Petitioner filed a Motion to Reconsider pursuant to "Fed. R. P. Rule 40(a)(1)"[3], along with a supporting Memorandum, asking the Court to reconsider its dismissal of his case after Petitioner failed to file a response to the Court's procedural default analysis as instructed. (Doc. Nos. 69, 70). Petitioner subsequently filed two Motions to Supplement Petitioner's Reply in Opposition of Respondent's Response to Petitioner's Motion to Reconsider (Doc. Nos. 82, 84). The motions to supplement will be granted, and the Court considers the arguments made therein in this Memorandum.

There is no federal procedural rule permitting motions for reconsideration. However, Rule 59(e) of the Federal Rules of Civil Procedure permit motions to alter or amend judgment. A Rule 59(e) motion may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l*

---

[2] Petitioner subsequently filed a second Notice of Appeal (Doc. No. 83), which the Sixth Circuit dismissed as duplicative of the one Petitioner already had filed. (Doc. No. 87).

[3] Rule 40 of the Federal Rules of Civil Procedure pertains to scheduling cases for trial and is not applicable here. There is no Rule 40(a)(1). Rule 40(a)(1) of the Federal Rules of Appellate Procedure permits all parties 45 days to file a petition for rehearing in cases involving governmental defendants. The Federal Rules of Appellate Procedure do not govern in this court.

*Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). Rule 59 motions must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). Petitioner's motion was filed within that period, so the Court will consider the motion under Rule 59(e).

**A. The Prison Mailbox Rule Does Not Apply Under the Circumstances Presented Here.**

As recounted above, after dismissing all but two of the claims raised in Petitioner's Section 2254 petition, the Court offered Petitioner an opportunity to show cause why his remaining claims should not be dismissed as procedurally defaulted. (Doc. No. 61). The Court granted Petitioner two extensions of time to file his response, resulting a final due date of November 30, 2023. (Doc. Nos. 63, 65). In his Motion to Reconsider, which the Court construes as a Rule 59(e) motion to alter or amend judgment, Petitioner contends that he timely mailed[4] a multi-part response in compliance with the Court's Order in October and November 2023. Specifically, Petitioner contends that he mailed a response and memorandum in support of his response to the Court on October 31, 2023 (Doc. No. 70-2 at PageID# 4879-4911) followed by a letter[5] (*id*. at PageID# 4918-19), an "Amended Supplemental Brief in Support of Memorandum of Law in Support of Petitioner's Respon[s]es to the U.S. District Court's Order to Explain Claim 2 and Claim 3" (*id*. at PageID# 4921-24), and an "Amended Supplemental Brief", all purportedly signed and mailed on November 22, 2023. (*Id*. at PageID# 4925-4950).

---

[4] By "mailing," Petitioner means that he presented his materials to prison officials for mailing.

[5] The letter is dated as follows:
    Date: November 14th, 2023
    Date: November 22nd, 2023 – Re-Submitted.
(Doc. No. 70-2 at PageID# 4918). The reference line of the letter is "Proof of Filing on October 31, 2023." (*Id*.) In the letter, Petitioner writes that he is "re-submitting" the "Notice because the District Court has not informed Mr. Carter they received his original responses to the U.S. District Court's Order to explain Claim 2 and Claim 3." (*Id*. at PageID# 4919).

As proof, he attaches his purported prison mail log covering this period. (*Id*. at PageID# 4913). The proffered log appears to show that Petitioner sent mail to Respondent Herbert H. Slatery, III on October 31, 2023, at the address of "801 Broadway Room US Courthouse, Nashville, TN 37203."[6] (*Id*.) The Certificate of Service in the response Petitioner alleges he mailed on that date states that Plaintiff mailed the response to Respondent Slatery (at the incorrect address) and to the undersigned (at the correct address). (Doc. No. 70-2 at PageID# 4882). The Court did not receive the response, however. The prison mail log also appears to show that Petitioner sent mail to the undersigned on November 15, 2023, and November 22, 2023, at "719 Church Street, Nashville, TN 37203" (*id*.), which is the correct address for the Court, but the Court did not receive any mail at all from Petitioner in November 2023.

Under the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002) and *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail typically is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. The rationale for this rule is that "pro se prisoners have no control over delays between the prison authorities' receipt of [a pleading] and its filing, and their lack of freedom bars them from delivering the [pleading] to the court clerk personally." *Houston*, 487 U.S. 266, 273-74. Courts therefore assume, "absent contrary evidence," that an incarcerated person delivered a legal filing to prison authorities "on the date he or she signed [it]." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Here, "contrary evidence" calls into question the appropriateness of applying the prison mailbox rule to Petitioner's response to the Court's November 2, 2023 Order.

---

[6] The proper address for Respondent Slatery is "Tennessee Attorney General's Office, P.O. Box 20207, Nashville, TN 37202-0207." Whatever Petitioner placed in the prison mail system to Mr. Slatery on October 31, 2023, may not have been received by Mr. Slatery due to the incorrect address.

5

First, the extended delay of two months between the date Petitioner allegedly presented his response to prison officials for mailing and the date the Court Clerk received it increases Petitioner's burden to establish timely filing. *See United States v. Buck*, No. 1:09-CR-432, 2011 WL 4073878, at *2 (N.D. Ohio Sept. 13, 2011) (finding that, "[t]hough the extended delay in this case—nearly four months—does not impose a prima facie bar on the application of the prison mailbox rule", the delay "must withstand more scrutiny than a delay of three or five days, especially in light of the uncontroverted evidence that same mailroom's delivery methods were demonstrably prompt."). Petitioner has not met this burden. In 2023, in every instance but one,[7] Petitioner's mail to the Court arrived within two weeks of the date Petitioner certified that he placed the mail into the prison mail system. *See* Doc. No. 54 (certified on 3/25/2023, received on 4/4/2023); Doc. No. 55 (certified on 3/25/2023, received on 4/5/2023); Doc. No. 58 (certified on 7/25/2023, received on 8/1/2023); Doc. No. 59 (certified on 8/15/2023, received on 8/18/2023); Doc. No. 62 (certified on 9/8/2023, received on 9/15/2023); Doc. No. 66 (certified on 12/11/2023, received on 12/15/2023). Docket Nos. 54 and 55 were mailed from the West Tennessee State Penitentiary, and Docket Nos. 58, 59, 62, 64, and 66 were mailed from the Hardeman County Correctional Facility after Petitioner's transfer. Thus, the evidence shows that mail service from both facilities to the Court proceeded in a consistent fashion (delivery within a few days, typically a week or so, and up to one month) in 2023 until Petitioner claims that he presented his response to prison officials for mailing. Indeed, according to Petitioner, normal mail delivery apparently was interrupted for a brief window—the same window within which Petitioner's response was due—and resumed only *after* Petitioner claimed to have mailed his response that the Court never

---

[7] One mailing, a Motion for a 30-Day Extension (Doc. No. 64), was certified as having been presented to prison officials for mailing on 9/13/2023 and received by the Court over a month later on 10/27/2023. The envelope in which the motion arrived bears two overlapping postmarks, 9/14/2023 and 10/27/2023. (*Id*. at PageID# 4693).

received. *See Buck*, 2011 WL 4073878, at *3 (finding the prison mailbox rule should not apply where, *inter alia*, there was uncontroverted evidence that petitioner's own mail deposited under similar circumstances was expeditiously transmitted).

Second, Petitioner's own papers partially contradict his account of the mailings. The Certificate of Service in the memorandum in support of the response Petitioner alleges he mailed on October 31, 2023, states that Plaintiff mailed the memorandum to "Office of the Clerk, United States District Court, Nashville, TN 37203." (Doc. No. 70-2 at PageID# 4911). However, Petitioner maintains that he mailed his response to Respondent Slatery at the address of 801 Broadway, Nashville, TN 37203, which is evidenced by the prison mail log. Thus, there is a discrepancy. *See Tutt v. Cathers*, No. 6:20-cv-075-HRW, 2021 WL 518317, at *4 (E.D. Ky. Feb. 11, 2021) (citing *Buck*, 2011 WL 4073878, at *1-2 ("A petitioner's signature need not be blindly credited where 'contrary evidence' indicates untimely filing . . ."); *Grady v. United States*, 269 F.3d 913, 916-17 (8th Cir. 2001) ("[The petitioner] bears the ultimate burden of proving his entitlement to benefit from the [prison mailbox] rule.")).

Third, Petitioner argues unpersuasively that serving motions on Mr. Slatery (if Petitioner in fact successfully did so) fulfilled his obligation of responding to the Court's Order. Mr. Slatery is a Respondent in this case. Mailing legal documents to Mr. Slatery is not the equivalent of mailing legal documents to the Court for filing. Thus, even if Mr. Slatery in fact received whatever Petitioner placed in the prison mail system (Petitioner alleges it was the "Petitioner's Respon[s]e to the U.S. District Court's Court Order to Explain Claim 2 and Claim 3") on October 31, 2023, prior to the Court's deadline of November 30, 2023, that mailing would not have constituted compliance with the Court's instructions. (*See* Doc. No. 70 at PageID# 4711).

7

While Petitioner submitted purported copies of what he alleges he mailed to the Court in October and November 2023, those copies do not prove that Petitioner in fact mailed those documents to the Court under the circumstances presented here. Likewise, while the prison log reflects that Petitioner mailed some documents to the Court, it does not reflect whether those documents were related to this case or another case or whether the documents are what Petitioner alleges he mailed. Based on the evidence before it, the Court finds that the prison mailbox rule should not apply to the disputed mailings. Without the application of the prison mailbox rule, Petitioner failed to respond to the Court's Order before the deadline, and his case was properly dismissed. Petitioner is not entitled to relief pursuant to Rule 59(e) as he has not shown that there was a clear error of law, newly discovered evidence, or an intervening change in controlling law, or that the prevention of manifest injustice requires the application of Rule 59(e).

**B. Even if the Prison Mailbox Rule Applies, Claims 2 and 3 Still Must Be Dismissed.**

Even assuming that Petitioner mailed the response (*see* Doc. No. 70-2)[8] before the deadline as he alleges, Petitioner is still not entitled to relief under Rule 59(e). Claims 2 and 3 are procedurally defaulted without cause.

After the Court dismissed Petitioner's other claims, there were two remaining claims, both asserting that the trial court erred. In Claim 2, Petitioner asserts that the trial court improperly allowed Petitioner to begin representing himself on October 26, 2012. (Doc. No. 37 at PageID# 4145; Doc. No. 37-2). In Claim 3, Petitioner asserts that the trial court failed to rule on several pro se pretrial motions he filed while representing himself on October 30, 2012. (Doc. No. 37 at PageID# 4156-47; Doc. No. 37-3 at PageID# 4185-86, 4190-91, 4195).

---

[8] To be clear, the Court has considered the multi-part response in assuming, for purposes of this Memorandum Opinion, that Petitioner's response was timely filed.

In his multi-part response (which the Court assumes *arguendo* was timely filed), Petitioner contends that his default should be excused based on the actual-innocence exception. That is, he admits that he did not properly exhaust Claims 2 and 3, but he contends that the Court should consider those claims because he is innocent. (Doc. No. 69 at PageID# 4931-32). The Court will address each claim in turn.

The Court set forth the relevant factual and procedural background of Petitioner's underlying state-court proceedings in its Memorandum entered on August 29, 2023. (Doc. No. 60 at PageID# 4637-41). Therein, the Court also set forth the legal standards for state prisoners seeking federal habeas relief. (*Id.* at PageID# 4643-45). The Court incorporates those sections of the Memorandum herein by reference.

1. Claim 2—Allowing Petitioner to Represent Himself on October 26, 2012

On October 26, 2012, the trial court held a hearing on Attorney Byrd's third motion to withdraw, granted the motion, and ruled that Petitioner would represent himself with Byrd as elbow counsel. Petitioner alleges that he told the court at that hearing that he wanted to represent himself, but he asserts in Claim 2 that the court failed to ensure that his waiver of counsel was knowing and intelligent. (*See* Doc. No. 37-2 at PageID# 4145).

Petitioner did not make this argument to the Tennessee Court of Criminal Appeals (TCCA) at any point.[9] *See State v. Carter*, No. M2014-0153-CCA-R3-CD, 2016 WL 7799281 (Tenn. Crim. App. Mar. 8, 2016) (direct appeal); *Carter v. State*, No. M2018-00061-CCA-R3-PC, 2019 WL 1110308 (Tenn. Crim. App. Mar. 11, 2019) (post-conviction appeal); *Carter v. State*, No. M2019-01014- CCA-R3-HC, 2020 WL 5558144 (Tenn. Crim. App. Sept. 17, 2020) (appeal from denial

---

[9] Petitioner alleges that he was unable to prepare a post-conviction petition that raised this claim because the trial court denied his multiple attempts to retrieve the October 26, 2012 trial transcripts of that hearing. (*See* Doc. No. 70-2 at PageID# 4888).

9

of third state habeas corpus petition). No state court remedies remain for doing so. *See* Tenn. Code Ann. § 40-30-102(c) (establishing Tennessee's "one-petition" limitation on post-conviction relief); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (explaining the three narrow circumstances in which a state prisoner may file a motion to reopen post-conviction proceedings, none of which applies to these claims). Claim 2 therefore is procedurally defaulted. *See Jones. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.").

The Sixth Circuit has confirmed that the type of claim presented in Claim 2—a claim that a trial court did not exercise appropriate care when allowing a defendant to represent himself—is subject to the doctrine of procedural default, just as any other claim. *See Carruthers v. May*, 889 F.3d 273, 289 (6th Cir. 2018) (rejecting the argument that "a claim of total deprivation of counsel at a critical stage in the criminal proceedings cannot be defaulted because it alleges structural constitutional error"); *Stanfill v. Adams*, No. 19-5925, 2020 WL 13563356, at *2 (6th Cir. Mar. 2, 2020) (denying certificate of appealability for a claim like Claim 2 because it was procedurally defaulted and petitioner "failed to argue that the procedural default should be set aside due to cause and prejudice or actual innocence"). Claim 2, therefore, is not subject to review in this federal habeas proceeding unless Petitioner can "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790-91 (6th Cir. 2014)).

As cause to overcome the default of Claim 2, Petitioner contends that appellate counsel was ineffective for failing to raise this issue on direct appeal. (Doc. No. 70-2 at PageID# 4897). This type of argument can, in theory, provide a pathway to demonstrating cause for a default. *See*

10

*Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing 477 U.S. at 492). But "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Petitioner did not present the TCCA with a claim of appellate counsel ineffectiveness that relates to Claim 2. *See Carter*, 2019 WL 1110308 (post-conviction appeal). Petitioner therefore has not demonstrated cause necessary to obtain review of Claim 2.

Petitioner also alleges that he is innocent, attempting to show a manifest miscarriage of justice. "This exception [to the procedural default rule] has been applied only when a habeas petitioner has demonstrated that he is actually innocent." *Hodges*, 727 F.3d at 532 (citing *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006)). A credible claim of actual innocence must begin with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Here, however, Petitioner has not presented any new evidence of innocence. Instead, alleges that his prosecution was based on an illegal search because his car was impounded in a different county by which he was prosecuted. This claim alleges legal innocence rather than factual innocence and, as such, is insufficient to overcome his default. Moreover, the Court already has addressed Petitioner's claims (Claims 1.A and 4) based on the validity of the search of Petitioner's car and determined that the claims are not in a category of reviewable claims for a federal habeas court. (*See* Doc. No. 60 at PageID# 4648-4650).

For all these reasons, Claim 2 is barred from review in this case based on the doctrine of procedural default, even if Petitioner had timely responded to the Court's Order.

### 2. Claim 3—Failure to Rule on Pro Se Pretrial Motions

Four days after the trial court ruled that Petitioner would represent himself, on October 30, 2012, Petitioner filed several pro se motions. In Claim 3, Petitioner asserts that the trial court erred by failing to rule on these motions. (Doc. No. 37 at PageID# 4156-47; Doc. No. 37-3 at PageID# 4185-86, 4190-91, 4195).

Petitioner raised this claim on post-conviction appeal, and the TCCA ruled that Petitioner had waived it by not raising it on direct appeal. *See Carter*, 2019 WL 1110308, at *8 (citing Tenn. Code Ann. § 40-30-106(g) ("To the extent that the petitioner is referring to the trial court's failure to rule on pro se pleadings filed prior to trial, any claim of error in this regard that occurred prior to trial has been waived by the petitioner's failure to present it as a ground for relief on direct appeal.")). Tennessee's waiver rule is "an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *See McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir. 2002) (citations omitted). The TCCA "actually enforced [this] state procedural sanction" by not reviewing Claim 3 further. *See McNeill*, 10 F.4th at 595 (quoting *Maupin*, 785 F.2d at 138). Claim 3, therefore, is procedurally defaulted. *See Davila v. Davis*, 582 U.S. 521, 527 (2017) (citing *Beard v. Kindler*, 558 U.S. 53, 55 (2009) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.")).

Petitioner properly exhausted a claim that appellate counsel was ineffective for failing to raise Claim 3 on direct appeal. As an independent ground for federal habeas relief, the Court reviewed that claim of appellate ineffectiveness with AEDPA deference in its analysis of Claim 3.B. *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019) (citing *Joseph v.*

12

*Coyle*, 469 F.3d 441, 459 (6th Cir. 2006)). But as an assertion of cause to excuse a procedural default, this claim of appellate ineffectiveness is subject to de novo review. *Id*. (citing *Joseph*, 469 F.3d at 459). Thus, the Court will revisit appellate counsel's treatment of Claim 3 on direct appeal in this context.

Even on de novo review, it is difficult for a petitioner to establish that counsel was ineffective for failing to raise one claim over another on direct appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("[I]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.")). That is because the hallmark of effective appellate advocacy is raising "only those arguments most likely to succeed," and not "every nonfrivolous argument." *Davila*, 582 U.S. at 533 (citations omitted). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id*. (citing *Robbins*, 528 U.S. at 288). And a showing of deficiency must be accompanied by a showing of prejudice, which is "'a reasonable probability that . . . [the petitioner] would have prevailed on his appeal' had counsel raised the unreasonably omitted issues." *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 230 (6th Cir. 2019) (quoting *Robbins*, 528 U.S. at 288).

Petitioner has not shown deficiency or prejudice. As for deficiency, appellate counsel testified at the evidentiary hearing that he recalled Petitioner asking him to raise Claim 3 on direct appeal, but counel chose not to because he did not think that "[t]he pro se motions . . . added anything to the argument [they] were making at the Court of Appeals." (Doc. No. 20-21 at PageID# 3097). Appellate counsel also testified that, based on his recollection at the time—about two-and-a-half years after filing the appellate brief—Petitioner's pro se pretrial motions "really rehash[ed]"

13

the issues raised in the motions to suppress filed by Attorney Walwyn and Attorney Byrd, and those suppression issues were already being raised. (*Id*.) Petitioner attempts to undermine this testimony by arguing that his pro se pretrial motions addressed more than just suppression issues. (*See* Doc. No. 37-3 at PageID# 4186-90). But Petitioner fails to recognize that appellate counsel's testimony about rehashing suppression issues was equivocal. (*See* Doc. No. 20-21 at PageID# 3097 ("[A]gain, this has been at least a couple of years.")). The important takeaway from appellate counsel's testimony is that he was aware of Petitioner's desire to raise Claim 3 on direct appeal but made a strategic decision not to include it. That decision was not deficient unless Claim 3 was clearly stronger than the eight issues appellate counsel did raise. Petitioner fails to make this required showing of comparative strength, particularly with respect to the forfeiture-of-counsel and suppression rulings that appellate counsel zealously (though unsuccessfully) challenged. (*See* Doc. No. 20-5 at PageID# 2085-2108 (arguing the forfeiture and suppression issues)); *Carter*, 2016 WL 7799281, at *14-19 (TCCA's analysis of the forfeiture and suppression issues). Petitioner thus has not shown that appellate counsel was deficient for failing to raise Claim 3 on direct appeal. *See Halvorsen v. White*, 746 F. App'x 489, 501 (6th Cir. 2018) (citing *Jones v. Barnes*, 463 U.S. 745, 752 (1983) ("Appellate advocacy is not a 'kitchen-sink' activity; it demands selectivity of argument.").

      As for prejudice, the record reflects that Petitioner filed four pro se pretrial motions on October 30, 2012, including motions for a bill of particulars, to dismiss the indictment, to suppress evidence, and to disclose grand jury materials. The pro se suppression motion essentially rehashed the suppression issues that were raised and rejected on direct appeal. (*See* Doc. No. 19-2 at PageID# 582-608 (pro se motion challenging the warrantless seizure of Petitioner's vehicle by a
14

law enforcement officer operating outside the parameters of his jurisdiction)); *Carter*, 2016 WL 7799281, at *17-19. Thus, Petitioner shows no prejudice.

Petitioner argues that the trial court's failure to rule on the pro se motion for a bill of particulars prevented him from learning how the State arrived at the $60,000+ valuation of the stolen comic books in the superseding indictment. (Doc. No. 37-3 at PageID# 4189). However, the record reflects that Petitioner was provided that information anyway. At the hearing on Petitioner's motion for new trial, Attorney Byrd testified that he specifically discussed this issue with Petitioner and explained his strategy for attacking the $60,000+ valuation at trial, which included cross-examining Dr. Clark's expected testimony on the subject. ("Q. And you're aware that [Dr. Clark is] able to testify to the value of his own property? A. And I explained that to Mr. Carter.")). Bret Gunn, the attorney representing the State, testified that he interacted with Petitioner personally while Petitioner was representing himself before trial. (*Id*. at 57). Gunn testified that he specifically recalled giving Petitioner a copy of "the spreadsheet that [Dr. Clark] had done that detailed the comic books that were taken and his estimation of the value." (*Id*. at 58). Petitioner thus has not shown that a bill of particulars would have contributed to his defense.

Finally, Petitioner maintains that the pro se motion to dismiss the indictment raised three arguments. The Court finds that none of those arguments have merit. First, Petitioner argued that the indictment "fail[ed] to state the facts constituting the offense with a degree of certainty." (Doc. No. 37-3 at PageID# 4188). Petitioner makes an apparent reference to a Tennessee statute requiring an indictment to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Tenn. Code Ann. § 40-13-202. But Tennessee courts "eschew

15

strict pleading requirements for indictments," *State v. Duncan*, 505 S.W.3d 480, 485 (Tenn. 2016), and "'indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements.'" *Id*. at 491 (quoting *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000)). The Tennessee Supreme Court has "held that a specific reference within the indictment to the relevant statute may provide the accused sufficient notice of the charged offense." *State v. Smith*, 492 S.W.3d 224, 241 (Tenn. 2016) (citing *State v. Sledge*, 15 S.W.3d 93, 95 (Tenn. 2000); *State v. Carter*, 121 S.W.3d 579, 587 (Tenn. 2003)). Here, both counts of the superseding indictment cite the relevant statute, and the Court concludes that it easily passes muster under Tennessee's standard for sufficient indictments. (*See* Doc. No. 19-1 at PageID# 510-11).

Second, Petitioner maintains that the indictment should have been dismissed because it "fail[ed] to show a state of facts bringing the offense within the jurisdiction of the county in which the indictment was preferred." (Doc. No. 37-3 at PageID# 4188). This is an apparent reference to another state statutory requirement. *See* Tenn. Code Ann. § 40-13-208 ("It is not necessary for the indictment to allege where the offense was committed, but the proof shall show a state of facts bringing the offense within the jurisdiction of the county in which the indictment was preferred."). As discussed in the Court's prior Memorandum with regard to Claim 1—Petitioner's challenge to the Davidson County Criminal Court's subject matter jurisdiction—the state courts have explained to Petitioner why Davidson County had jurisdiction over Petitioner's criminal case under state law. *See Carter*, 2019 WL 1110308, at *10 (explaining that a defendant may be prosecuted in any county where he committed an element of the offense). This challenge to the indictment was futile, and Petitioner did not suffer prejudice from the trial court failing to rule on it.

16

The third and final argument in the pro se motion to dismiss the indictment was that the indictment resulted from "an invalid process." (Doc. No. 37-3 at PageID# 4189). To the extent Petitioner implies that the indictment should have been dismissed because the seizure and search of his car were invalid, the trial court had already denied the motions to suppress filed by Attorney Walwyn and Attorney Byrd by the time Petitioner filed this pro se motion. Petitioner would not have obtained relief by relitigating suppression issues through the framework of a motion to dismiss the indictment. Again, Petitioner did not suffer prejudice from the trial court's failure to address this argument.

For all these reasons, Petitioner's claim of appellate ineffectiveness is without merit under a de novo review, so it cannot excuse Claim 3's procedural default. And because Petitioner has not presented new evidence of innocence, he cannot rely on the actual innocence gateway to obtaining review either. *See House*, 547 U.S. at 537. Accordingly, like Claim 2, Claim 3 is procedurally defaulted without cause.

Thus, even if Petitioner had timely filed a response to the Court's Order directing him to address his procedural defaults of Claims 2 and 3, Petitioner is not entitled to relief pursuant to Rule 59(e) as he has not shown that there was a clear error of law, newly discovered evidence, or an intervening change in controlling law, or that the prevention of manifest injustice requires the application of Rule 59(e). His Motion to Reconsider (Doc. No. 69) will be denied.

### IV. MOTION FOR EXTENSION TO FILE NOTICE OF APPEAL AND CERTIFICATE OF APPEALABILITY

Next, Petitioner filed a motion seeking an extension of time to file a Notice of Appeal and a request for a Certificate of Appealability. (Doc. No. 76).

Rule 4(a)(1) of the Federal Rules of Appellate Procedure provides that a notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment or order appealed

17

from." This time limit is mandatory and jurisdictional. *Browder v. Dir., Dep't of Corr. Ill.*, 434 U.S. 257, 264 (1978). The failure of an appellant to timely file a notice of appeal deprives an appellate court of jurisdiction. *Rhoden v. Campbell*, 153 F. 3d 773, 774 (6th Cir. 1998). A party asserting excusable neglect or good cause, however, may seek to extend the time limit if it files a motion for extension of time within 30 days of the time for filing a notice of appeal. *See* Fed. R. App. P. 4(a)(5); *Zack v. United States*, 133 F.3d 451, 453 (6th Cir. 1998).

Despite Petitioner's motion (which bears a notary stamp dated January 25, 2024) (*see* Doc. No. 76 at PageID# 5275), the record reflects that Petitioner filed a Notice of Appeal on January 31, 2024[10] (Doc. No. 80), which was within the 30-day window for filing a timely Notice of Appeal. The Sixth Circuit Court of Appeals has assigned the appellate case number of 24-5148 to Petitioner's appeal. (Doc. No. 81).

Given that Petitioner's Notice of Appeal was timely filed, his motion seeking an extension of time within which to file a timely appeal (Doc. No. 76) will be denied as moot.

## V. CONCLUSION

Based on the foregoing, Petitioner's Motions to Ascertain Status of Case (Doc. Nos. 78, 85, and 92) will be granted.

Petitioner's Motions to Supplement Petitioner's Reply in Opposition of Respondent's Response to Petitioner's Motion to Reconsider (Doc. Nos. 82 & 84) will be granted, and the Court considers those supplements herein.

---

[10] The Court need not question the application of the prison mailbox rule here because Petitioner's Notice of Appeal was submitted with a notary stamp bearing the date of January 31, 2024. That date matches the date of Petitioner's Certificate of Service on the Notice of Appeal. (*See* Doc. No. 80 at PageID# 5443). The Court received the Notice of Appeal on February 8, 2024, consistent with the usual approximate two-week to one-month mailing time reflected in the record, as noted above.

Petitioner's Motion for 30 Day Extension of Time to File re Notice of Appeal/Certificate of Appealability (Doc. No. 76) will be denied as moot.

Finally, Plaintiff's Motion to Reconsider (Doc. No. 69), which the Court construes as motion for relief pursuant to Federal Rule of Civil Procedure 59(e), will be denied.

The Clerk will be directed to notify the Sixth Circuit Court of Appeals of Petitioner's various notices indicating his intent to "add issues into the appellant's Notice of Appeal." (Doc. Nos. 88, 89, 90, 91).

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE